Case 1:16-mj-00856-RLM   Document 1   Filed 09/21/16   Page 1 of 11 PageID #: 1

TJS:MKP
F# 2014R00365

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 917-975-8751, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 31041050093850 AND ELECTRONIC SERIAL NUMBER D13128008584439, THAT IS STORED AT PREMISES CONTROLLED BY AT&T | **16 M 0856**<br><br>Case No. 14-CR-189 (PKC) (S-2) |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, STEVEN MULLEN, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 917-975-8751, with International Mobile Subscriber Identity Number 31041050093850 and Electronic Serial Number D13128008584439 ("the SUBJECT PHONE"), that is stored at premises controlled by AT&T, a wireless telephone service provider headquartered at 208 S. Akard St., Dallas, Texas, 75202. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Department of Homeland, Homeland Security Investigations ("HSI"), and have been since 2007. For approximately two years, I have been worked with the Crimes Against Children squad. I have been assigned to investigate violations of criminal law relating to the sexual exploitation of children. I have gained expertise in this area through training in classes and daily work related to conducting these types of investigations. I have participated in a number of investigations into the receipt, possession, and/or distribution of child pornography by electronic means, as well as the sexual enticement of minors. As part of my responsibilities, I have gained expertise in the use of computers and cellular telephones to facilitate crimes against children. In particular, I am familiar with the use of historical cell site data to determine the location where crimes against children have taken place.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2551(e) (Conspiracy to Sexually Exploit a Child), 18 U.S.C. § 2552(a)(2), 2252(b)(1) (Receipt of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B), 2252(b)(2) (Possession of Child Pornography) have been committed. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and fruits of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. Since as early as July 2011, Alberto Randazzo, one of the co-defendants in the above-captioned case, has used the SUBJECT PHONE to conspire with others to sexually exploit children and to facilitate the receipt and possession of child pornography.

6. On February 15, 2013, detectives and officers with the New York City Police Department ("NYPD") executed a search warrant on Randazzo's home at 23-15 31st Avenue, Long Island City, New York, Apartment 3R pursuant to a New York State judge. The search warrant was based on information the NYPD had received that Randazzo had solicited women to provide him with photographs of the sexual abuse of their minor children. A number of electronic devices were seized in the search, including the SUBJECT PHONE.

7. The SUBJECT PHONE was forensically examined and revealed a number of text message exchanges between Randazzo and various women relating to the sexual abuse of children.

8. Specifically, between July 2011 and April 2012, Randazzo used the SUBJECT PHONE to communicate with a woman who has been identified as Jennie Lemay. During those exchanges Randazzo and Lemay discussed the sexual abuse of a child to whom Lemay had regular access ("Victim 1"), including agreeing to participate in Skype sessions during which Lemay would sexually abuse Victim 1 and including Randazzo's traveling to participate in the sexual abuse of Victim 1 in person. At the time of the text exchanges, Victim 1 was approximately eight years old.

9. Specifically, on July 5, 2011, Lemay sent Randazzo a picture that showed her face and naked breasts. Randazzo responded using the SUBJECT PHONE saying, "Omg, now I

3

know why [Victim 1] is in love with them" and "I hope that you can skype while he's sleeping and put them on his face :)" Lemay then responded "nice idea."

10. Later in the same conversation, Lemay states that she "will never do anything to hurt [Victim 1]." Randazzo replies that "If he's sleeping and you put your boobs on his cock while I'm watching on skype that won't hurt him." Lemay responds "well if he is sound asleep . . . he would not know."

11. On July 13, 2011, Lemay instant messages Randazzo using the SUBJECT PHONE saying, "[Y]ou won't believe last night . . . you would have loved to watch . . . he is one horny little boy."

12. On September 10, 2011, Lemay and Randazzo engage in a series of text messages about meeting in person, during which Randazzo is using the SUBJECT PHONE:

| | |
|---|---|
| LEMAY: | He sleeps like a rock |
| RANDAZZO: | Ok so should I come at like 3am? |
| LEMAY: | He fell asleep on mommys bed last night |
| RANDAZZO: | I get off at midnight. I can leave NYC at midnight and be there at like 3 or 4am |
| LEMAY: | Yes baby that works |
| LEMAY: | Come to my back door and slip inside the sliding glass door |
| LEMAY: | Slip into bed with me and [VICTIM 1] |
| RANDAZZO: | Ok that would be great. But are you sure you can suck his cock without waking him up? |
| RANDAZZO: | I would want you to give him Nyquil anyway. This way he's sleeping and you can move him around, etc. . . |

4

| | |
|---|---|
| LEMAY: | What form is it? A pill? |
| RANDAZZO: | Yes I think so. Would that be ok? You can tell him it's a vitamin. I hear it will make him sleep all night |
| RANDAZZO: | Maybe we can have a skype session soon and try the pill out |
| LEMAY: | Yes good idea |

13. On September 13, 2011, Randazzo, using the SUBJECT PHONE, and Lemay exchanged text messages that they would Skype on Saturday. During these conversations, Randazzo asked, "What will you show me on skype mommy?" Lemay replied, "What I will do with you baby. How I will suck you and your baby brother."

14. On the evening of Saturday, September 17, 2011, Randazzo, using the SUBJECT PHONE, and Lemay exchanged another series of text messages:

| | |
|---|---|
| RANDAZZO: | Did you give him something to sleep better? |
| LEMAY: | He's still awake we are out |
| LEMAY: | I will give him something with his meds |
| RANDAZZO: | Ok good ;) I will be home at exactly midnight. |
| LEMAY: | K |
| LEMAY: | He is in bed |
| LEMAY: | I hope he learned a lesson |
| LEMAY: | Little boys. Gotta love em |
| LEMAY: | I will let you know as soon as he falls asleep |
| LEMAY: | :-pwe need to teach him |
| RANDAZZO: | Ok I'm on my way home! |

There were no more text messages that night.

5

15. Throughout the rest of 2011 and the beginning of 2012, Randazzo, using the SUBJECT PHONE and Lemay continue to communicate.

16. On April 18, 2012, Randazzo and Lemay engaged in a series of text messages expressing excitement that they were going to meet up that day. At 3:01 PM Randazzo says "I'll be there in 20." At 3:23 he says, "I'm in the forge park area but I don't see a hotel. Can you call me?" A hotel receipt indicates that Jennie Lemay spent the night at the Residence Inn at 4 Forge Park in Franklin, MA on the night of April 18, 2012.

17. On July 7, 2015, HSI agents interviewed Lemay at her home. She stated in sum and substance and in part that in 2011 and 2012 she was in communication with Randazzo and that on several occasions Lemay set up Skype video charts with Randazzo during which she would sexually abuse Victim 1, including by touching Victim 1's penis over his underwear and by simulating sexual intercourse with Victim 1. Lemay also admitted that on more than one occasion she gave Victim 1 drugs to keep him asleep, and she confirmed that Randazzo had travelled to meet her and Victim 1 in a hotel in Massachusetts.

18. Cell-site location information for the time period identified in Attachment B is likely to constitute evidence of the crimes under investigation. In particular, cell-site location information for the time period identified in Attachment B will corroborate Lemay's admission that Randazzo travelled to Massachusetts to participate in the sexual abuse of Victim 1.

19. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data

6

identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

20. Based on my training and experience, I know that AT&T can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

21. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because

7

the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

22. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

Respectfully submitted,

_____
Steven Mullen
Special Agent
Department of Homeland Security

Subscribed and sworn to before me on ____Sept. 21____, 2016

_____
THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE

8

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number number 917-975-8751, with International Mobile Subscriber Identity Number 31041050093850 and Electronic Serial Number D13128008584439 ("the Account"), that are stored at premises controlled by AT&T, a wireless telephone service provider headquartered at 208 S. Akard St., Dallas, Texas, 75202.

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.  Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period April 17, 2012 – April 20, 2012:

  a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 2551(e) (Conspiracy to Sexually Exploit a Child), 18 U.S.C. § 2552(a)(2), 2252(b)(1) (Receipt of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B), 2252(b)(2) (Possession of Child Pornography) involving Alberto Randazzo during the period April 17, 2012 – April 20, 2012.